IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROSE WEISTOCK, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 07 C 1678 |
| v. ) | |
| ) | Magistrate Judge Nan R. Nolan |
| MIDWESTERN REGIONAL MEDICAL ) | |
| CENTER and ROBERT LEVIN, M.D., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Rose Weistock, Allan Weistock, and Janet Weistock bring this diversity medical malpractice action against Defendants Midwestern Regional Medical Center (Midwestern) and Dr. Robert Levin for the treatment rendered to their husband and father, Harvey Weistock. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and this case is set for trial on June 1, 2010. Before the Court is one motion *in limine* filed by the Plaintiffs and seven motions *in limine* filed by the Defendants. For the reasons stated, Plaintiffs' motion *in limine* (Doc. 160) is denied, Defendants' motions *in limine* Nos. 1 and 2 (Docs. 165 and 166) are granted as unopposed, Defendants' motions *in limine* Nos. 3 and 5 are denied (Docs. 167 and 169), Defendants' motions *in limine* Nos. 4 and 7 (Docs. 168 and 171) are reserved, and Defendants' motion *in limine* No. 6 (Doc. 170) is granted.

## BACKGROUND

In April 2004, Harvey Weistock was formally diagnosed with advanced, stage IIIB non-small cell lung cancer. From approximately May 24, 2004 through April 6, 2005, Harvey Weistock received chemotherapy treatment prescribed by Dr. Levin at Midwestern. The parties have stipulated that Mr. Weistock was known to have chronic renal insufficiency and non-ischemic dilated cardiomyopathy. Plaintiffs allege that the course of chemotherapy treatment administered

by Dr. Levin and Midwestern caused and/or exacerbated Harvey Weistock's various medical conditions, eventually leading to his death on September 8, 2005.

## DISCUSSION

A motion *in limine* is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." Luce v. United States, 469 U.S. 38, 40 n. 2 (1984). The Seventh Circuit has recognized that motions *in limine* are useful devices that "streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." United States v. Tokash, 282 F.3d 962, 968 (7th Cir. 2002). Trial judges have broad discretion when ruling on motions *in limine*. Jenkins v. Chrysler Motors Corp, 316 F.3d 663, 664 (7th Cir. 2002). The Court addresses each motion *in limine* in turn below.

### I.  Plaintiffs' Motion *in Limine*

Plaintiffs move to bar the admission of any evidence of the decedent Harvey Weistock's history of cigarette smoking as both irrelevant and prejudicial. Defendants say that Mr. Weistock had a history of smoking at least one pack of cigarettes per day for 44 years until 2003. Defendants contend that Mr. Weistock's smoking history contributed to his lung cancer and lung disease and contributed to other health conditions which Defendants allege lead to his death, including cardiac disease and respiratory disease.

"In a medical malpractice action, a plaintiff must provide: (1) the proper standard of care by which to measure the defendant's conduct; (2) a negligent breach of the standard of care; and (3) that the resulting injury was proximately caused by the defendant's lack of skill or care." Wilbourn v. Cavalenes, 923 N.E.2d 937, 949 (Ill.App. Feb. 19, 2010). The focus of this litigation is on whether the chemotherapy treatment Mr. Weistock received with the Defendants caused Mr. Weistock's injuries and death. Smoking evidence may be relevant to negate causation or to

negate or reduce damages, but Defendants cannot introduce evidence of Mr. Weistock's smoking history without showing a causal connection between Mr. Weistock's smoking and his condition and death. Lagestee v. Days Inn Management Co., 709 N.E.2d 270, 279-80 (Ill. App. 1999); see also IPI 31.04. In Lagestee, the Illinois Appellate Court reversed the trial court's admission of evidence of plaintiff's smoking because "defendants offered no relevant evidence of a causal connection between [plaintiff's] smoking and his L5-S1 disk herniation [the injury for which plaintiffs were seeking compensation in the case]." Id. at 280. Here, Defendants' expert, Dr. Leon Dragon, provides sufficient evidence of a causal connection between Mr. Weistock's smoking history and his lung cancer, his condition post-mid April 2005, and his death. In his report dated January 8, 2010, Dr. Dragon states, in relevant part:

> [A]ny alleged deviation from the standard of care was not a proximate cause of the death of Harvey Weistock. Harvey Weistock had a history of congestive heart failure as documented by his cardiologist in Maryland and as documented in the medical records and depositions. Mr. Weistock also had a history of recurrent bladder cancer, a history of smoking, hypertension, and had undergone a total colectomy. Mr. Weistock also had a history of cigarette smoking, and had stage IIIB lung cancer. From the date of his diagnosis in April, 2004, until his death in September, 2005, was approximately 17 months. As stated previously, the average life expectancy for stage IIIB lung cancer is 15 to 18 months. Therefore, given the history of Mr. Weistock, it does not appear that any treatment administered shortened his life expectancy.
>
> * * *
>
> Instead, the death of Harvey Weistock was due to complications of his heart disease and respiratory complications from his lung cancer.

Any prejudice from admitting evidence of Mr. Weistock's smoking history on the issues of causation and damages does not substantially outweigh its probative value, as required by Rule 403. Plaintiffs' Motion *in Limine* is therefore denied.

## II. **Defendants' Unopposed Motions *in Limine* Nos. 1 and 2**

Defendants filed two motions *in limine* which Plaintiffs do not oppose. These unopposed motions are granted. Accordingly, no evidence may be introduced regarding the following: (1) the

fact that Defendants may have liability insurance or any insurance whatsoever and (2) prior claims or lawsuits made against the Defendants.

### III.     Defendants' Motions *in Limine* Nos. 3 and 5

Defendants' third and fifth motions *in limine* seek to bar Plaintiffs' expert, Dr. Rodrigo Erlich, from testifying at trial. Defendants seek to bar Plaintiffs from introducing Dr. Erlich's testimony at trial because: (1) Plaintiffs failed to provide the data or other information considered by Dr. Erlich in forming his opinions as required by Rule 26(a)(2)(B)(ii) and (2) Dr. Erlich presented new opinions at his deposition which were not disclosed in his report. In the alternative, Defendants argue that Dr. Erlich should not be able to testify regarding opinions given at his deposition and should be limited to the opinions in his report.

Federal Rules of Civil Procedure 26(a)(2)(B) and (C) set forth the requirements for an expert who submits a written report of his opinions. Federal Rule of Civil Procedure 26(a)(2)(B) requires an expert to disclose, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the data or other information considered by the witness in forming" the opinions the witness will express. Fed. R. Civ. P. 26(a)(2)(B)(i), (ii). Expert reports cannot be "sketchy, vague, or preliminary in nature." Salgado by Salgado v. Gen. Motors Corp., 150 F.3d 735, 741 n.6 (7th Cir. 1998). Rather, expert reports must be "detailed and complete" so that "opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." Id. Rule 26(C) specifies when expert disclosures must be made. A party must disclose expert reports "at the time and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(C). Rule 26(e) requires that parties timely supplement or correct expert disclosures as necessary, but "this duty to supplement does not provide an opening for wholly new opinions." Rowe Int'l Corp. v. Ecast,

Inc., 586 F.Supp.2d 924, 933 n.1 (N.D. Ill. 2008).

Rule 37 provides sanctions for the untimely disclosure of expert opinions. Rule 37(c) provides that "[i]f a party fails to provide information . . . required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 37(c) further provides that "[i]n addition to or instead of this sanction, the court . . . may impose other appropriate sanctions." Id. A Rule 37(c)(1) sanction "must be one that a reasonable jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction." Salgado, 150 F.3d at 740. The following factors guide the trial court's determination of whether exclusion is appropriate: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. David v. Caterpillar, 324 F.3d 851, 857 (7th Cir. 2003).

With these principles in mind, the Court considers Defendants' challenges to Dr. Erlich's testimony. Plaintiffs disclosed Dr. Erlich's report at the time they originally filed their lawsuit. The Court ordered expert discovery closed on February 3, 2010. (Doc. 143). Defendants claim that they were "ambushed" with brand new opinions by Dr. Erlich at his March 25, 2010 deposition. Plaintiffs say that Dr. Erlich's report "is not meant to be an all inclusive report of Dr. Erlich's opinions in this matter." (Doc. 178 at 1). Plaintiffs take the position that Defendants had the opportunity to explore all of Dr. Erlich's opinions and the basis for them at his deposition. The first question is whether the statements by Dr. Erlich at his deposition are new opinions. If the opinions offered by Dr. Erlich at his deposition "do not differ substantially from his opinions offered in his expert report," they are not "late" for purposes of Rule 26(a) and there is no risk of "ambush" and no reason to exclude Dr. Erlich's deposition testimony. Rowe Intern. Corp., 586 F.Supp.2d at 935.

In his one page report dated July 7, 2006, Dr. Erlich explained that Mr. Weistock's hospitalization in mid April 2005 and his condition thereafter were "caused by the administration of two nephrotoxic chemotherapeutic agents in combination (pemetrexed and cisplatinum) in a patient with baseline creatinine clearance less than 30 ml/min. . . . Pemetrexed [brand name Alimta] should not be administered to patients with creatinine clearance below 40 ml/min. Cisplatinum should not be administered to patients with creatinine clearance below 60 ml/min." (Doc. 169, Ex. A). Dr. Erlich opined that "the grade 4 toxicity of [Mr. Weistock's] chemotherapy was obviously the result of incompetence and deviation from the standard of care, and strongly contributed to Mr. Weistock's death."

According to Defendants, Dr. Erlich offered the following new opinions about the standard of care and deviations therefrom at his deposition: (1) prescribing of Alimta and Cisplatin as a second line of chemotherapy in October 2004 was a deviation from the standard of care; (2) the standard of care required that Dr. Levin order 24 hours of urine collection for a creatinine clearance test; (3) Dr. Erlich's opinions referred to national standards of care; (4) the various hospitalizations and outpatient treatment Mr. Weistock received from April 2005 until his death were proximately caused by the Defendants' deviations from the standard of care; and (5) the expenses and hospital bills related to the treatments received from April 2005 until Mr. Weistock's death were caused by Dr. Levin's deviation from the standard of care. Defendants do not explain specifically why Dr. Erlich's challenged deposition testimony is in fact "new."

The Court finds that the challenged portions of Dr. Erlich's deposition testimony do not constitute new and untimely opinions. Dr. Erlich's opinion that the October 2004 prescription of Altima and Cisplatin was a deviation from the standard of care is consistent with the opinion presented in his report. Dr. Erlich's statement that the standard of care required Dr. Levin to order 24 hours of urine collection for a creatinine clearance test during the administration of Alimta and Cisplatin merely expounded upon and supports Dr. Erlich's original opinion that it was a deviation

from the standard of care to administer Alimta and Cisplatin in April 2005 given Dr. Weistock's creatinine clearance level. Dr. Erlich's testimony that a national standard of care applies to the chemotherapy treatment in this case is consistent with Dr. Erlich's report and not a new opinion. Finally, Dr. Erlich's testimony that Mr. Weistock's hospitalizations and treatments from April 2005 until his death and the resulting expenses and hospital bills were caused by Defendants' deviations from the standard of care is consistent with Dr. Erlich's original opinion in his report.

Defendants next argue that Dr. Erlich's report violated Rule 26(a)(2)(B)(ii) by failing to provide the data or other information Dr. Erlich used in forming his opinion. Plaintiffs oppose Defendants' motion on the ground that all documents reviewed by Dr. Erlich have been produced to Defendants. Plaintiffs also say that Defendants have not produced a list of the data or information considered by their experts. Plaintiffs' arguments miss the mark. It is not enough to show that the documents reviewed by Dr. Erlich have been produced to Defendants or to argue that Defendants' experts failed to comply with Rule 26. The relevant inquiry is whether Plaintiffs' failure to comply is justified or is harmless.

Defendants first learned of the records Dr. Erlich reviewed at his deposition on March 25, 2010. Defendants argue that the untimely disclosure of the materials used by Dr. Erlich in forming his opinion harmed them because "they were severely prejudiced in preparing for the deposition of Dr. Erlich." (Doc. 193 at 2). There is no question that Plaintiffs violated Rule 26(a)(2)(B)(ii) by not providing the data or other information Dr. Erlich used in forming his opinion in his report. No justification for the violation has been given, but total exclusion of Dr. Erlich's testimony would be an extreme sanction for the failure to comply with Rule 26(a)(2)(B)(ii). Because Defendants have not specifically explained how they were hampered in preparing for Dr. Erlich's deposition, the Court finds very little, if any, prejudice because of Plaintiffs' failure to comply with Rule 26(a)(2)(B)(ii). However, the Court is willing to cure any prejudice to Defendants from an inadequate opportunity to prepare for Dr. Erlich's deposition by allowing a second deposition of Dr.

Erlich regarding the materials he used in forming his opinion at Plaintiffs' expense. Beyond their ability to adequately prepare for Dr. Erlich's deposition, Defendants do not present any prejudice caused by Dr. Erlich's failure to disclose materials used in forming his opinions. Moreover, Defendants do not argue that admitting Dr. Erlich's testimony would disrupt the trial of this case, and the Court does not foresee any disruption. Finally, there is no evidence of bad faith or willfulness by Plaintiffs, and Defendants do not so argue. Defendants' Motions *in Limine* Nos. 3 and 5 are denied.

## IV.     **Defendants' Motion *in Limine* No. 4**

Defendants seek to bar evidence relating to any of the policies and procedures of Midwestern Regional Medical Center. It appears that Defendants' motion is based on relevance grounds. Defendants say that Plaintiffs' expert, Dr. Erlich, did not review or rely upon any policies or procedures of Midwestern in arriving at his opinions in this case. Defendants also point out that there are no allegations in the Amended Complaint pertaining to any violations of policies or procedures of Midwestern. Plaintiffs respond that there is no rule requiring that they disclose whether they intend to use information gained from Midwestern's policies and procedures at trial. Plaintiffs also state that Dr. Erlich was not in possession of the Midwestern policies and procedures at the time he wrote his report.

If Plaintiffs intend to introduce any Midwestern policy or procedure at trial, they must explain the relevance of that particular evidence to the claims or defenses in this action. Because Plaintiffs have not articulated their theory of relevance for any Midwestern policy or procedure, the Court refrains from ruling on Defendants' Motion *in Limine* No. 4 at this time. The Court will reconsider the motion at the Final Pretrial Conference.

## V.     Defendants' Motion *in Limine* No. 6

Defendants move to prohibit Plaintiffs from arguing to the jury that doses of chemotherapy medication that were greater than reasonable were administered to Mr. Weistock. Paragraph 17(c) of Plaintiffs' Amended Complaint alleges that Defendants were negligent in using doses of chemotherapy that were greater than reasonable under the circumstances of the decedent's condition. Defendants argue that there is no evidence to support the allegations in Paragraph 17(c) because Dr. Erlich does not opine that Mr. Weistock received doses of chemotherapy that were greater than reasonable. Plaintiffs respond that there is evidence to support the allegation in Paragraph 17(c) in Dr. Erlich's report. Dr. Erlich's report states: "In my professional opinion, the grade 4 toxicity of his chemotherapy regimen was obviously the result of incompetence and deviation from the standard of care, and strongly contributed to Mr. Weistock's death." Plaintiffs also anticipated that Dr. Erlich would provide additional opinions and evidence concerning Plaintiffs' claim at his deposition.

Dr. Erlich was deposed on March 25, 2010. The Court has reviewed pages 16 through 25 of Dr. Erlich's deposition. It is clear from the deposition testimony that it is Dr. Erlich's opinion that the chemotheraphy drugs of Alimta and Cisplatin should not have been prescribed as a second line of treatment for Mr. Weistock's stage 3B lung cancer, not that a lower dose of Alimta or Cisplatin should have been given. Dr. Erlich testified: "I believe Cisplatin should not be used in this patient, in the care of this patient." Dr. Erlich Dep. at 20. Dr. Erlich explained that Cisplatin should not be used in a patient with a "grasping clearance below 60." Id. With regard to Alimta, Dr. Erlich was asked the following question and gave the following answer:

> Q.     So your opinion isn't that the dose should have been less, your opinion is that the drug shouldn't have been used at all; is that correct?
>
> A.     Yes, because my estimation of his renal function at that time was not 45 –

Id. at 25. Dr. Erlich opined that Alimta should not been given if the patient has a creatinine

-9-

clearance of less than 45.  Id. at 24.  Finally, Dr. Erlich testified that Dr. Weistock received the standard full dose of Alimta and Cisplatin.  Id. at 23.  Because no evidence has been presented that Defendants were negligent in failing to prescribe a lower dose of Alimta and Cisplatin for Mr. Weistock, the Court grants Defendants' Motion *in Limine* No. 6.

**VI.     Defendants' Motion *in Limine* No. 7**

Defendants' final motion *in limine* seeks to exclude evidence related to the video or brochure created by Cancer Treatment Centers of America and sent to the Plaintiffs while they were contemplating cancer treatment at Midwestern.  Defendants say they first learned of the video and brochure at Rose Weistock's deposition and that these items were not produced by Plaintiffs in discovery.  According to Defendants, Rose Weistock did not testify that she relied on the video or brochure in making any decisions for Mr. Weistock to receive treatment at Midwestern. Defendants also argue that the video and brochure are irrelevant because they were prepared by Cancer Treatment Centers of America, which is not a party to these proceedings.

Plaintiffs state that the video was produced to defense counsel on or about June 25, 2008 and the brochure was produced with Plaintiffs' response to the motion *in limine* on March 16, 2010. Plaintiffs contend that the video and brochure are relevant because Cancer Treatment Centers of America is the parent company of Defendant Midwestern and the video and brochure were sent to Plaintiffs for the purpose of attracting them to Midwestern and other medical centers.  Plaintiffs also point out that the video and brochure were created for the benefit of Midwestern so it is reasonable to assume that it has copies of them.

The Court reserves ruling on Defendants' Motion *in Limine* No. 7.  Apparently a dispute remains concerning whether Plaintiffs have produced the brochure and video to Defendants. Plaintiffs' counsel shall bring an extra copy of the brochure and video to the Final Pretrial Conference.  At that time, the Court will consider the relevance of the brochure and video to this

case.

## **CONCLUSION**

For these reasons, Plaintiffs' motion *in limine* is denied, Defendants' motions *in limine* Nos. 1 and 2 are granted as unopposed, Defendants' motions *in limine* Nos. 3 and 5 are denied, Defendants' motions *in limine* Nos. 4 and 7 are reserved, and Defendants' motion *in limine* No. 6 is granted. Final pretrial conference set for April 28, 2010 at 11:00 a.m. is changed to April 28, 2010 at 9:30 a.m.

E N T E R:

*[signature: Nan R. Nolan]*

**Nan R. Nolan**
**United States Magistrate Judge**

**Dated: April 23, 2010**